933 So.2d 1003 (2006)
Roger L. TUTOR, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00495-COA.
Court of Appeals of Mississippi.
July 18, 2006.
*1004 William Preston Knight, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Roger Tutor was convicted of murder by a Pontotoc County jury. Thereafter, the Pontotoc County Circuit Court sentenced Tutor to serve a sentence of life in the custody of the Mississippi Department of Corrections. Aggrieved, Tutor appeals and asserts that the court erred in finding him competent to stand trial.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On November 21, 2002, Tutor shot and killed his father after having an argument with him at the family farm in Pontotoc County. After his arrest but prior to trial, Tutor claimed that he was incompetent to stand trial. On April 17, 2003, the court ordered a psychiatric examination of Tutor by the staff at the Mississippi State Hospital at Whitfield. On January 27, 2004, a report was sent to the court indicating that a majority of the examiners found that Tutor was incompetent to stand trial.[1] Thereafter, on April 13, 2004, a competency hearing was held where the court found that Tutor was incompetent to stand trial. Tutor was then committed to the hospital at Whitfield.
*1005 ¶ 4. On June 16, 2004, a new report was sent to the court indicating that the staff at Whitfield, after having observed Tutor for three months, believed that Tutor was, in fact, competent to stand trial. No competency hearing was held, but Tutor stood trial on November 30 through December 2, 2004, at the conclusion of which he was found guilty of murdering his father. Tutor testified in his own defense at trial, indicating that the shooting was either an accident or was done in self-defense. Prior to finalizing jury instructions, the court made the following finding of fact on the record, indicating that it found that Tutor was competent to stand trial:
No determination has ever been made by the Court as to [Tutor's] competency, but it is my understanding that after that report, the last report of the hospital, the Defendant has instructed counsel that any questions of his competency or sanity were not [to] be raised in the courseas a defense in the course of the handling of this case.... So that the matter will not be unanswered, the Court is of the opinion that the Defendant has been restored to his competency and has participated in the trial. As a matter of fact, he testified during the course of this trial in a cogent manner and from all appearances seems to be thoroughly capable of assisting in his defense. He testified, so the Court finds that there is no question of his competency. He is in fact competent to proceed and has been through the course of this trial.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE

Standard of Review
¶ 6. "The standard for competence to stand trial is whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and `has a rational as well as factual understanding of the proceedings against him.'" Snow v. State, 800 So.2d 472, 489(¶ 61) (Miss.2001) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). In order to stand trial, a defendant must be (1) able to understand the proceedings against him, (2) able to communicate rationally with his attorney regarding the proceedings, (3) "able to recall relevant facts," (4) able to testify in his own defense if he so chooses, and (5) able to do all of the above in a manner "commensurate with the severity of the case." Id. at 489(¶ 59) (quoting Howard v. State, 701 So.2d 274, 279 (Miss.1997)). We will not overturn a trial court's determination of competency unless "the finding was manifestly against the overwhelming weight of the evidence." Id. (quoting Emanuel v. State, 412 So.2d 1187, 1189 (Miss. 1982)).

Competency Finding
¶ 7. Rule 9.06 of the Uniform Circuit and County Court Rules governs competency determinations. According to Rule 9.06, if the court "has reasonable ground to believe that the defendant is incompetent" the court "shall order" the defendant to undergo a mental examination. After the ordered examination, the court "shall conduct a hearing to determine if the defendant is competent to stand trial." These procedures were clearly followed in this case. Upon motion by the defense, the court ordered that Tutor be given a mental examination, which ultimately indicated that Tutor was incompetent to stand trial. Thereafter, the court held a competency hearing where it determined that Tutor was, in fact, incompetent to stand trial. *1006 Tutor was then committed to a state hospital.
¶ 8. However, Rule 9.06 also addresses the proper procedures that should be followed when a defendant who has been found incompetent to stand trial is later found to be competent:
If at any time during such commitment, the proper official at the Mississippi State Hospital or other appropriate mental health facility shall consider that the defendant is competent to stand trial, such official shall promptly notify the court of that effect in writing, and place the defendant in the custody of the sheriff. The court shall then proceed to conduct a hearing on the competency of the defendant to stand trial.

(emphasis added). These procedures were not followed by the court below, since no competency hearing was held by the court before proceeding to trial. Although the court should have followed the proper procedures and held a second competency hearing, we find that the failure to do so in this case was harmless error.
¶ 9. The doctors caring for Tutor found that he was competent to stand trial, and sent a letter to that effect to the court. The letter from the doctors who observed Tutor during his commitment specifically detailed their findings as to Tutor's competency to stand trial:
We are unanimous in our opinion that Mr. Tutor has the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings against him.
We also are unanimous in our opinion that Mr. Tutor has presently, and had at the time of his arrest, the capacity to understand and knowingly, intelligently, and voluntarily to waiver [sic] or assert his constitutional rights.
Finally, we are unanimous in our opinion that on or about 21 November 2002, Mr. Tutor would have known the nature, quality, and wrongfulness of his alleged acts and would have known at that time that committing murder would be against the law.
Mr. Tutor presently is not experiencing any signs or symptoms of a major mental illness. Although he endorses numerous concerns that sound delusional, these are not generally consistent with actual delusions. Rather, it is our opinion that Mr. Tutor fabricates or grossly exaggerates symptoms of psychosis, such as his stated belief that the alleged victim, his father, had been replaced by an Al Qaida agent. Even if these claims represent actual delusions, it is our opinion that he would have known that killing anyone, regardless of who they were, would have been wrong.
Mr. Tutor has not been treated with any psychiatric medications during this admission. Although he has reported delusional-sounding paranoid material, such as his report that he is, `the President's field advisor ... to find the al Qaida pockets,' this was felt both to be a product of his personality disorder, rather than a major mental disorder (and so not likely to respond to treatment with psychiatric medications) and to be fabricated or grossly exaggerated because of his legal situation, making it much more difficult for us to assess whatif any benefit he might receive from such treatment.
Mr. Tutor appears to be of at least average intelligence and should have no difficulty communicating with his attorney in order to prepare for his legal proceedings.
*1007 (emphasis added). The letter clearly indicated that the doctors found that Tutor understood the proceedings against him and was capable of assisting his attorney in his defense. Tutor's later testimony on the stand indicated that he was capable of taking the stand in his own defense and could recall relevant facts as needed while testifying. The court made a finding on the record indicating that it found that Tutor was competent, based both on the letter from his doctors and on the court's observation of Tutor throughout the trial, including during his testimony on the stand. There was sufficient evidence, from the letter and from Tutor's testimony, from which the court could find that Tutor was competent to stand trial.
¶ 10. We find nothing in the record to indicate that Tutor was not able to consult with his attorney and participate in his defense with "a reasonable degree of rational understanding." We also note that Tutor has presented no new evidence contradicting the finding of the court and his doctors that he was competent to stand trial.
¶ 11. Finally, we note that Tutor did not object to the lack of a hearing at the trial or request one on his own, nor did he raise the issue of the competency hearing in his motion for a new trial. In fact, neither Tutor nor his attorney ever questioned the court's determination that Tutor was, and had been, competent to stand trial and testify, despite the fact that the judge discussed his finding in front of them. Nothing indicates, and Tutor does not claim, that Tutor or his attorney were prevented from objecting to the court's determination of Tutor's competency without holding a competency hearing. Therefore, we note that this issue is also procedurally barred from consideration: "A trial judge cannot be put in error on a matter which was not presented to him for decision." Reynolds v. State, 913 So.2d 290, 300(¶ 37) (Miss.2005) (quoting Pruett v. Thigpen, 665 F.Supp. 1254, 1262 (N.D.Miss.1986)).
¶ 12. Tutor points out that he received no treatment or medication while committed to the hospital after the first competency hearing. Therefore, he argues, he could not have suddenly become competent, because he had not received any treatment that would change his status. We find that this argument is without merit. The letter sent to inform the court that the doctors believed that Tutor was competent to stand trial made clear that this determination was made after having further observed Tutor's behavior. The doctors specifically found that he "fabricated or grossly exaggerated" some of his mental problems "because of his legal situation." In other words, the doctors observed Tutor further and came to a different determination as to his competency. The report does not allege that Tutor's condition had changed or improved, but merely stated that the doctors had come to a different conclusion regarding his competency to stand trial. Furthermore, Tutor's condition could have improved or changed after he was committed, even if he did not receive treatment of any kind. In other words, his mental condition could have improved on its own to the point where he was competent to stand trial without receiving any treatment whatsoever. No evidence has been produced by Tutor indicating that he could not have improved without treatment. Tutor's argument to the contrary is without merit.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOC COUNTY OF CONVICTION OF MURDER AND SENTENCE TO SERVE LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL *1008 COSTS OF THIS APPEAL ARE ASSESSED TO PONTOTOC COUNTY.
LEE AND MYERS P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] The report clearly indicated that the incompetency determination was not unanimous.